thence to the street, where one was arrested. No claim was interposed for the distillery property, but Young claimed the personal property seized in the junk-shop, and Sherman the horses, &c., seized in the livery stable. Both claimants denied any knowledge of the existence of a still in the rear stable. There was evidence that the smell of distillation in the rear building would necessarily be detected throughout the whole place. There was no evidence that either of them was interested in the still.

BENEDICT, District Judge, held, that under section 48 of the internal revenue law, the juxtaposition of the property proceeded against in the same place, or within the same enclosure with the illicit still, was sufficient to forfeit it; provided the owners of the property knew of the existence of the illicit still in the rear stable, and that under the evidence in the case the jury would not be warranted in finding that the existence of the illicit still was unknown to the owner of the place and the keeper of the livery stable. A verdict was accordingly directed in favor of the government.

## Case No. 16,104.

### UNITED STATES v. QUANTITY OF TOBACCO.

[Affirming Case No. 16,105. Nowhere reported; opinion not now accessible.]

## Case No. 16,105.

### UNITED STATES v. QUANTITY OF TOBACCO.

[5 Ben. 112; 3 Int. Rev. Rec. 158.] [1]

District Court, S. D. New York. May, 1871.[2]

INTERNAL REVENUE—EVIDENCE—FRAUDULENT INTENT—SALES—MANUFACTURED GOODS.

1. A fraudulent intent in respect to a particular importation of goods may be legitimately inferred by a jury from a previous fraudulent intent and previous fraudulent acts, shown in respect to previous importations.

2. The same kind of evidence is legitimate in prosecutions for the forfeiture of property under the internal revenue acts.

3. The internal revenue act of March 3d, 1865 [13 Stat. 468], which went into effect on the 1st of April, 1865, imposed a tax of thirty-five cents a pound upon certain tobacco, upon which the previous act had imposed a tax of twenty-five cents a pound. On the 31st of March, 1865, L., a tobacco dealer in New York, entered upon his sales-book a sale of about $60,000 worth of such tobacco to K. & W., who gave him their check for the amount. Two or three days afterwards he gave to K. & W. his check for the same amount. The tobacco never passed into the possession of K. & W., but L. kept it on his own premises, treat-

---

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission. 13 Int. Rev. Rec. 158. contains only a partial report.]

[2][Affirmed by circuit court; case not reported.]

ed it as his own, and disposed of it as such. In connection with that alleged sale, he entered a quantity of the tobacco in the tax-book, at that date, and returned it as sold: Held, that, under the 94th section of the act of June 30th, 1864 [13 Stat. 264], it was illegal for L. to return that tobacco for tax, because it was not sold, nor was it "removed for consumption," under the 91st section of the same act.

4. The fact of this tax of twenty-five cents having been paid on this tobacco by L., under the above circumstances, was no reason for his not returning for tax a sale of a portion of it in April and May, 1867, although the tax upon such tobacco had at that time been reduced to fifteen cents a pound, by the act of July 13th, 1866 [14 Stat. 98], notwithstanding the provision of the 70th section of the latter act.

5. Under the 90th section of the act of 1864, as amended by the 9th section of the act of July 13th, 1866, a manufacturer of tobacco is required to keep a book showing the goods manufactured by him as well as the goods he has sold.

6. Manufactured goods, under that section, means goods the manufacture of which is completed, so that the goods are in a condition to be sold.

[Cited in U. S. v. 16 Barrels Distilled Spirits, Case No. 16,300.]

7. It appeared to be the manner of doing business in the warehouse of L., to enter for tax on a certain day a large mass of tobacco, which was then taken down stairs into the retail counter department, where it was sold at retail, no record being kept of such sales: Held, that this was an illegal mode of doing business; that there was no sale when the property was taken to the retail counter; and that, under the 90th section of the act of 1864, as amended by the act of July 13th, 1866, a record of the sales at the retail counter should have been kept, and an abstract of such sales returned by the 10th day of every month.

[This was an information of forfeiture against a quantity of tobacco claimed by C. H. Lilienthal.]

Thomas Simons, Asst U. S. Dist. Atty.

Thomas Harland, Benjamin K. Phelps, and Daniel G. Rollins, Jr., for claimant.

BLATCHFORD, District Judge (charging jury). This case has occupied your attention for a long time, this being the nineteenth day since we entered upon its consideration. It is one of a class of cases which, as you have perceived, requires, in its examination by the counsel, the court and the jury, the exercise of patience and forbearance, in investigating matters of great tediousness. The consumption of time is inseparable from the character of the inquiry, and was, in my judgment, absolutely necessary. The trial was commenced in the expectation and with the intention, on the part of the district attorney, of saving the time of the court and jury from being taken up with an examination of the books, if an accurate transcript and faithful representation of their contents, made out of court, could be presented. But, on an examination, it was quite apparent that the "callings," as they have been denominated, which were made and were sought to be put in evidence, were not reliable. That fact was admitted by the dis-